**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chemehuevi Indian Tribe,<br><br>        Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>        Defendants. | No. CV-20-02308-PHX-ROS<br><br>**ORDER** |

      Indian tribes are entitled to take over the administration of programs usually operated by the Bureau of Indian Affairs. *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). To do so, a tribe submits to the BIA a contract proposal. *Id.* Once the BIA receives such a proposal, it has 90 days to approve or reject it. 25 U.S.C. § 5321(a)(2). If the BIA does nothing, the proposed contract automatically takes effect.

      In late 2020, the Chemehuevi Indian Tribe filed this suit alleging it had submitted a proposal to the BIA, the BIA took no action within the 90 days, but the BIA refused to provide an executed version of the contract. In its complaint, the Tribe sought an order requiring the BIA provide the executed contract. Shortly after this suit was filed, the BIA executed the contract and sent a copy to the Tribe. The BIA now seeks dismissal, arguing the suit is moot. The Tribe disagrees, pointing out it is seeking money damages and, in any event, the BIA's behavior is likely to recur. The current complaint does not seek money damages and, in the unique context of this suit, such a demand will be required.

And the only injunctive relief required in the complaint is no longer available, meaning the Tribe will be required to amend if it wishes to pursue alternative injunctive relief.

## BACKGROUND

Passed in 1975, the Indian Self Determination and Education Assistance Act "created a system by which tribes could take over the administration of programs operated by the BIA." *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). The statute authorized tribes to "provide services such as education and law enforcement that otherwise would have been provided by the Federal Government." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012). To do so, "a tribe that is receiving a particular service from the BIA may submit a contract proposal to the BIA to take over the program and operate it as a contractor and receive the money that the BIA would have otherwise spent on the program." *Los Coyotes Band of Cahuilla & Cupeno Indians*, 729 F.3d at 1033. These contracts are known as "self-determination contracts" or "'638 contracts,' after the Public Law that created them." *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1002 (9th Cir. 2014) (citing Pub. L. 93-638, 88 Stat. 2203 (Jan. 4, 1975)). Once a tribe and the BIA have a valid 638 contract regarding a particular service, a tribe is free to enter a subcontract with a third party for that third party to perform the relevant services.

By statute, the BIA "is required to enter into [638] contracts upon the request of a tribe unless one of five exceptions applies." *Id.* Once a tribe submits a contract proposal, the BIA has 90 days to either accept or reject it. 25 U.S.C. § 5321(a)(2). Pursuant to regulation, "[a] proposal that is not declined within 90 days . . . is deemed approved." 25 C.F.R. § 900.18. In other words, if a tribe submits a contract proposal to the BIA and the BIA does not respond, the proposal automatically takes effect.

The Chemehuevi Indian Tribe "is the beneficial owner of the Chemehuevi Indian Reservation . . . in San Bernardino County, California." (Doc. 1 at 4). On that reservation the Tribe owns and operates six mobile home parks. The Tribe leases the spaces at those parks and individual tenants "pay monthly lease fees to the Tribe." (Doc. 1 at 4). The

Tribe also "administers and leases 77 homes to tribal members on the Reservation." (Doc. 1 at 4). An individual wishing to purchase a home to be placed at one of the Tribe's mobile home parks or elsewhere on the Reservation must provide his bank with documentation, including a document known as a Title Status Report, proving there is a valid lease for use of the underlying land. Without a Title Status Report, a bank will not provide an individual with financing to purchase a home.

For many years prior to this lawsuit the Tribe had a 638 contract for realty services. The Tribe subcontracted with the Agua Caliente Band of Indians regarding those realty services. (Doc. 1 at 6). Pursuant to the subcontract, the Agua Caliente Band of Indians recorded the Tribe's leases with the appropriate federal office. The subcontract also required the Agua Caliente Band of Indians produce Title Status Reports for individuals wishing to obtain home financing. When the 638 contract regarding realty services was about to expire, the Tribe sent the BIA a proposal to renew the contract. (Doc. 1 at 6). The BIA neither formally accepted nor rejected the proposal during the 90-day window. When the Tribe later inquired, the BIA responded on May 15, 2020 that the contract proposal "was approved by operation of law." (Doc. 1 at 6; Doc. 7 at 11).

After hearing from the BIA, the Tribe requested a copy of the renewed 638 contract. (Doc. 1 at 7-8). According to the Tribe, such a copy was needed for the Agua Caliente Band of Indians to continue producing Title Status Reports. (Doc. 1 at 8). The BIA refused to provide a copy of the executed contract. Instead, on October 19, 2020, the BIA sent a letter to the Tribe stating it would send the executed contract at an unspecified time in the future. (Doc. 7 at 11). The Tribe grew tired of waiting for the executed contract and, on November 30, 2020, the Tribe filed the present suit against the United States and BIA officials (collectively, "the BIA"). The Tribe alleged three claims: violation of the Indian Self Determination and Education Assistance Act, violation of the Administrative Procedure Act, and "breach of trust." The complaint requested the BIA's refusal to provide a copy of the 638 contract be found unlawful and that the BIA be ordered to "deliver the signed 638 Contract to the Tribe." (Doc. 1 at 14).

Service of process was completed in early December 2020 and, in late January 2021, the BIA sent the Tribe the executed 638 contract. That document reflected a BIA official had signed the contract on January 28, 2021. (Doc. 10-1 at 3). A Tribe official immediately signed the contract as well. (Doc. 10-2 at 2). Thus, as of January 29, 2021, the Tribe had a copy of the fully executed 638 contract. On February 16, 2021, the BIA moved to dismiss. According to the BIA, this case is "moot because the Tribe has now received the relief it sought: a signed and executed copy of an amended self-determination contract with the BIA." (Doc. 10 at 3). The Tribe counters the case is not moot because it is seeking money damages and the request for injunctive relief fits "squarely within the voluntary compliance . . . exception to the mootness doctrine." (Doc. 13 at 3).

## ANALYSIS

Based on the claims and type of relief set forth in the complaint, there is no longer a live controversy between the parties. Should the Tribe wish to pursue claims for money damages, or if the Tribe wishes to pursue claims based on ongoing BIA behavior, it is required to plead the appropriate facts and legal theories supporting such claims.

### I.     Money Damages

If the Tribe is seeking money damages, this suit is not moot. "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). Thus, "[i]f there is any chance of money changing hands," the Tribe's "suit remains live." *Id.* The present complaint, however, does not seek money damages. According to the BIA, if the Tribe wishes to "morph its claim into a suit for money damages" it "must present a new complaint entirely." (Doc. 17 at 3). The BIA does not indicate whether money damages are a possible form of relief for the Tribe's claims. Rather, the BIA simply argues the Court should enforce a pleading requirement that the Tribe explicitly seek money damages in its complaint.

The Ninth Circuit has not required a complaint explicitly seek money damages. *See, e.g.*, *Z Channel Ltd. P'ship v. Home Box Off., Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991);

*Jet Inv., Inc. v. Dep't of Army*, 84 F.3d 1137, 1143 (9th Cir. 1996). But a failure to include such a request in a complaint can lead to unnecessary disputes later. *See Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1096 (9th Cir. 2001) (determining plaintiff had not requested money damages in sufficiently clear manner). Because the BIA's liability for money damages may present difficult issues, such as sovereign immunity, the Tribe will be required to amend its complaint to include such a request in connection with the claims where it believes money damages are available.

## II.     Mootness Doctrine

The possibility of money damages does not resolve whether the Tribe's request for declaratory or injunctive relief is moot. The parties agree that, at the time the Tribe filed this suit, there was a live controversy between the parties. The parties also agree the BIA produced the 638 contract shortly after this suit was filed. Thus, the parties devote most of their briefing not to the question whether the claims for injunctive relief are moot in the usual sense but whether the "voluntary cessation" exception to mootness applies. Given the way the Tribe crafted its complaint, the exception does not apply.

As a general matter, a case is moot and must be dismissed "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). But "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* The "voluntary cessation" exception to mootness removes the incentive for a defendant to engage in such behavior. The exception provides that when a case begins with a live controversy, but a defendant then alters its conduct, the case is moot only if the defendant carries "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000).

A straightforward illustration of the "voluntary cessation" exception involved a

plaintiff who objected to his listing on the No Fly List. *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1036 (9th Cir. 2018). The plaintiff filed suit seeking, among other things, to be removed from the list. Shortly after the suit was filed, the government removed the plaintiff from the list. That removal, however, did not render the case moot. The Ninth Circuit concluded the "voluntary cessation" exception applied because the government had not carried its burden of showing the allegedly wrongful behavior would not recur. That is, the government remained free to place the plaintiff back on the list at any time. Based on the possibility the plaintiff would simply be placed back on the list, the government's post-suit actions were not enough to render the case moot. The present situation is not sufficiently similar.

The focus of the Tribe's complaint was obtaining the 638 contract involving realty services. Now that the BIA has produced the contract, there is no likelihood the BIA will resume its conduct regarding that exact contract. Absent time travel, it is simply not possible the BIA will repeat its "allegedly wrongful behavior" regarding the 638 contract involving realty services. Nor is there any relief the Court might order regarding that exact contract. With no possibility the precise wrongful behavior will resume, and no remedy regarding the exact contract being available, the Tribe's claims are moot. In seeking to avoid this conclusion, the Tribe presents arguments similar to what are often found in cases brought under the Freedom of Information Act.

The Ninth Circuit has recognized two types of FOIA claims: "a *specific* request claim and a *pattern or practice* claim." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016). A "specific request" is for a discrete document. If a plaintiff files suit alleging a specific request claim, but the agency then produces the document, "the specific FOIA claim is moot because the injury has been remedied." *Id.* at 1103. A "pattern and practice" claim is different. That type of claim is based on allegations that "an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* This type of claim "is not necessarily mooted by an agency's production of documents" because there is a sufficient likelihood the plaintiff will suffer similar harm

in the future based on the agency's pattern or practice of failing to comply with it obligations under FOIA. *Id.*

The Tribe's complaint was, in effect, a "specific request" seeking production of the 638 contract regarding realty services. Now that the 638 contract has been produced, the Tribe's "specific request" is moot. Despite that, the Tribe now argues it must interact with the BIA regarding many 638 contracts. While implicit, the Tribe appears to be arguing the BIA's dilatory behavior regarding 638 contracts is a recurring issue and, therefore, the Tribe should be allowed to pursue a "pattern or practice" claim regarding the BIA's behavior. If the complaint alleged facts regarding a "pattern or practice" by the BIA regarding 638 contracts, the Tribe's claims might not be moot. But the current complaint does not contain such allegations. Therefore, the complaint will be dismissed with leave to amend.

Should the Tribe choose to amend its complaint and continue to seek injunctive relief, it must allege facts regarding repeated behavior by the BIA regarding 638 contracts. In particular, the Tribe should allege instances of past behavior as well as facts indicating the Tribe will be subject to similar behavior in the future.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 10) is **GRANTED WITH LEAVE TO AMEND**. No later than **June 11, 2021**, Plaintiff shall file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal without prejudice in the event no amended complaint is filed by **June 11, 2021**.

Dated this 27th day of May, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge